UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| RACHEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | 1:21-CV-00303-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM L. JACKSON, INDIVIDUAL CAPACITY; and WILLIAM L. JACKSON, OFFICIAL CAPACITY AS THE CEO OF CHATTANOOGA-HAMILTON HOSPITAL D/B/A ERLANGER HEALTH SYSTEM, | ) ) ) ) ) ) ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rachel Clark ("Clark") is employed as a Registered Nurse at Erlanger Hospital, ("Erlanger"), in Chattanooga, Tennessee. Clark sued Defendant William Jackson ("Jackson"), the President and CEO of Erlanger Hospital, after he required all Erlanger healthcare employees to either be vaccinated against COVID-19 or face termination. Clark claims the vaccine mandate violated her constitutional rights to procedural and substantive due process guaranteed by the United States Constitution [Doc. 15]. Jackson filed a motion to dismiss for failure to state a claim [Doc. 16] and the parties have fully briefed the issue. Because Jackson's vaccine mandate does not violate Clark's substantive or procedural due process rights under the Constitution, Jackson's motion to dismiss is **GRANTED**, and Clark's claims are **DISMISSED WITH PREJUDICE**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Erlanger Hospital is a Medicare and Medicaid-certified provider that receives federal

funding from the Centers for Medicare and Medicaid Services ("CMS").[1]  On November 5, 2021, CMS published in the Federal Register a proposed Interim Final Rule ("IFR") requiring all non-exempt staff at Medicare and Medicaid-certified providers to receive their first COVID-19 vaccination by December 6, 2021.  *See Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61555 (Nov. 5, 2021).[2]  Providers whose employees did not comply with the vaccine mandate faced "enforcement remedies" such as monetary penalties, denial of payment for new admissions, or termination of their Medicare/Medicaid provider agreement. *Id*. at 61574.  To comply with the CMS vaccine mandate, Jackson advised all Erlanger staff to either be vaccinated or qualify for an exemption by December 5, 2021 and to be fully vaccinated by January 4, 2022 [Doc. 17-3, pg. 1].  Jackson explained that compliance was necessary for the financial health of the hospital, and that any staff who did not comply faced termination of their employment [*Id*.].  On December 1, 2021, Jackson temporarily suspended Erlanger's vaccine mandate after a federal district court enjoined CMS from enforcing the mandate,[3] but on January 13, 2022, the United States Supreme Court lifted the district court's injunction, permitting the CMS vaccine mandate to go into effect nationwide.  *See Biden v. Missouri*, 142 S. Ct. 647, 653 (2022).

Clark neither received a COVID-19 vaccine nor did she apply for an exemption.

---

[1]  CMS is an operating division of the United States Department of Health & Human Services.  *See* https://www.hhs.gov/about/agencies/orgchart/index.html (last visited on March 29, 2022 at 3:04 p.m.).

[2]  *Available at* https://www.federalregister.gov/documents/2021/11/05/2021-23831/medicare-and-medicaid programs-omnibus-covid-19-health-care-staff-vaccination. (last visited on March 25, 2022 at 11:37 p.m.).

[3]  *See Louisiana v. Becerra*, No. 3:21-CV-03970, 2021 WL 5609846 (W.D. La. Nov. 30, 2021).

Accordingly, Jackson suspended Clark without pay [Doc. 15, ¶ XIII]. Following her suspension, Clark filed this action against Jackson on behalf of herself and others similarly situated, alleging Jackson's vaccination "ultimatum" violated her "constitutional rights to privacy and to refuse medical treatment under the 14th Amendment." [Doc. 15, ¶ IX]. Clark also alleges Jackson "misrepresented … [that he] was under a legal compulsion to fire them if they did not get vaccinated by December 5, 2021." [Doc. 15, ¶ XIII].

## II. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, a court need not "accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Iqbal*, 556 U.S. at 678-79.

The "plausibility standard . . . occupies the wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id*. Alleged facts create a plausible claim when they give rise to a "reasonably founded hope that the discovery process will reveal

relevant evidence to support their claims." *Lindsay v. Yates*, 498 F.3d 440, n. 6 (6th Cir. 2007) (citation omitted).

## III. ANALYSIS

### A. Consideration of matters outside the pleadings.

Clark claims Jackson has improperly referred to matters outside the pleadings and that the Court should not consider them. In his motion, Jackson refers to and attaches exhibits not included in Clark's amended complaint, such as excerpts from Erlanger's bylaws [Doc. 17-1], excerpts from Erlanger's employment policy [Doc. 17-2], and two email messages sent by Jackson to Erlanger employees [Doc.17-3]. Clark argues Jackson is trying to "bootleg unauthenticated documents before the court" while avoiding conversion of his motion to dismiss into a motion for summary judgment [Doc. 21, pg. 1].

When deciding a motion to dismiss, a court ordinarily cannot consider evidence outside the pleadings. Fed. R. Civ. P. 12(d). But on a Rule 12(b)(6) motion, a court may consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Hancock v. Miller*, 852 F. App'x 914, 919 (6th Cir. 2021) (internal citations omitted). In her amended complaint, Clark contests Erlanger's employment actions, so excerpts from Erlanger's employment policy and bylaws are integral to the complaint, and therefore properly attached to Jackson's motion. Likewise, the links to CMS guidelines and the IFR are properly included in the motion because they are public records and affected Erlanger's decision to enforce the vaccine mandate. The two emails from Jackson are also integral to this action because Clark refers to both in her amended complaint. Indeed, she quotes the December 1, 2021 email verbatim [*See* Doc. 15, pgs. 3-4]. Therefore, the Court can review these materials without converting Jackson's motion to one for summary judgment. *McLaughlin v. CNX Gas Co.,*

4

*LLC*, 639 F. App'x 296, 298 (6th Cir. 2016) ("We may also consider documents that a defendant attaches to a motion if the documents are referred to in the plaintiff's complaint and are central to her claims without converting the motion to one for summary judgment.") (internal quotation marks and citations omitted).

**B.      Clark's substantive due process claim.**

Clark alleges Jackson violated her substantive Fourteenth Amendment right to refuse unwanted medical care when he suspended her without pay because she "refused and continues to refuse to be vaccinated." [Doc. 15, ¶ IX].  She argues "[t]he Supreme Court of the United States has made it abundantly clear that a competent adult has a right to refuse medical treatment under the 14th Amendment …." [Doc. 21, pg. 3].  She claims that "the CMS has no constitutional right to order any State of Tennessee governmental agent or entity to take punitive action against an employee for refusing unwanted medical treatment.  CMS is in effect ordering defendant to commit an assault on Rachel Clark."  [*Id.*].

Under the Fourteenth Amendment, '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The substantive due process component of the liberty clause of the Fourteenth Amendment "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988).  "If a protected class or fundamental right is involved, [the court] must apply strict scrutiny, but where no suspect class or fundamental right is implicated, [the court] must apply rational basis review." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005).

In her amended complaint, Clark claims the CMS vaccine mandate is a violation of her rights to privacy and to refuse medical care.  But though Clark claims a right to privacy violation,

she does not explain how that right has been violated. Claiming a general right to privacy in this context falls short of the "careful description" required under substantive due process analysis. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Hence, the Court will consider only whether the CMS vaccine mandate violated Clark's fundamental right to refuse medical care.

Clark cites the Supreme Court decision in *Cruzan by Cruzan v. Director, Missouri Dept. of Health* for the proposition that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." 497 U.S. 261, 262 (1990). But unlike the situation in *Cruzan*, Clark is not exercising a general, protected right to refuse "lifesaving hydration and nutrition." *Id*. Nor was Clark ever forced to receive a COVID-19 vaccination without her consent. *See id.* at 269. Instead, Clark refused a vaccine that was a requirement for her continued employment at a federally funded healthcare facility. The Erlanger vaccine requirement is distinguishable from the fundamental right to refuse medical treatment discussed in *Cruzan* because it is tied to Clark's continued employment at a healthcare facility and was not forced upon her without her consent. Indeed, Clark continues to successfully refuse vaccination against COVID-19 [Doc. 15, ¶ IX].

Moreover, Clark cites no case that holds vaccine mandates implicate a fundamental right. In fact, since 1905, the Supreme Court has applied rational basis analysis to vaccine mandates, suggesting that the right to refuse a vaccine is not a fundamental right. *See Jacobson v. Massachusetts*, 197 U.S. 11 (1905). In *Jacobson,* a Massachusetts town required its citizens to be vaccinated against smallpox or be subject to a five dollar fine. Jacobson refused the mandate and was fined five dollars. He vociferously challenged the vaccine mandate, arguing that it violated his liberty interest and was "unreasonable, arbitrary, and oppressive…hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best; and that

6

the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person." *Id.* at 26. But the Supreme Court rejected these arguments, holding that the "liberty secured by the Constitution … does not import an absolute right in each person to be, at all times in all circumstances, wholly freed from restraint." *Id.* Applying rational basis review,[4] the Court weighed Jacobson's right to refuse vaccination against the public interest and found that it was not a fundamental right: "[A] community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27. Since *Jacobson*, "federal courts have consistently held that vaccine mandates do not implicate a fundamental right and, accordingly, applied rational basis review in determining the constitutionality of such mandates." *Bauer v. Summey*, No. 2:21-CV-02952-DCN, 2021 WL 4900922, at *10 (D.S.C. Oct. 21, 2021) (collecting cases).

Given that rational basis applies, Clark has the burden to show the CMS vaccine mandate is not rationally related to a legitimate governmental interest. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). Under rational basis review, "a plaintiff faces a severe burden and must 'negate all possible rational justifications for the distinction.'" *Midkiff*, 409 F.3d at 770 (quoting *Gean v. Hattaway*, 330 F.3d 758, 771 (6th Cir. 2003)). "In the case of a public health crisis like the one presented by COVID-19 . . . latitude [for the challenged action] must be especially broad." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 128 (6th Cir. 2020) (internal quotation marks and citations omitted).

There is no dispute that preserving public health by slowing the spread of disease is a legitimate public interest. *See Jacobson,* 197 U.S. at 25-26. In this case, the Secretary of Health

---

[4] *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (stating that *Jacobson* "essentially applied a rational basis review").

7

and Human Services found vaccines are effective against the spread of COVID-19 in the healthcare setting, and the Supreme Court upheld that decision. *See Missouri*, 142 S. Ct. at 650, 653.[5] Thus, the Erlanger vaccine requirement is rationally related to the legitimate government interest of preserving the health of hospital employees and patients by slowing the spread of the COVID-19 virus in hospitals, where caregivers and patients are in close proximity with one another. *See We the Patriots USA, Inc. v. Hochul*, 17 F. 4th 266, 290 (2d Cir. 2021) (holding that state law requiring COVID-19 vaccination for healthcare workers "easily" met the rational basis standard); *Does 1-6 v. Mills*, 16 F. 4th 20, 32 (1st Cir. 2021) (holding that state vaccine mandate for healthcare workers satisfied rational basis review). Because the Erlanger vaccine mandate is rationally related to these legitimate interests, Clark has failed to plausibly allege the mandate violated her substantive due process right to privacy or her right to refuse medical treatment.

Finally, Clark's argument that there is no law allowing the federal government to mandate vaccines was made *prior* to the Supreme Court decision in *Missouri*, which resolved this very issue in favor of vaccine mandates: "We … conclude that the Secretary did not exceed his statutory authority in requiring that, in order to remain eligible for Medicare and Medicaid dollars, the facilities covered by the interim rule must ensure that their employees be vaccinated against COVID–19." 142 S. Ct. at 653. Thus, the argument that CMS lacked legal authority to impose a vaccine mandate for healthcare providers is without merit.

---

[5] In *Missouri,* the Supreme Court focused on several of the Secretary's justifications for the vaccine mandate. It noted that the Secretary issued the CMS mandate "after finding that vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished,'" citing several studies that showed the virus can spread between healthcare workers and their patients. *Missouri*, 142 S. Ct. at 651 (quoting 86 Fed. Reg. 61561). The Court also cited the Secretary's concern that transmission of the virus to Medicare and Medicaid patients was "particularly dangerous" as those patients were often elderly, disabled, or otherwise in poor health. *Id*. (citing 86 Fed. Reg. 61566, 61609).

C.  **Whether Clark has plausibly alleged Jackson violated her right to procedural due process.**

Clark argues the Erlanger vaccine mandate violated her right to procedural due process because she was not "given an individual consideration to her case as opposed to being the potential victim of a blanket firing." [Doc. 15, ¶ XIII]. To "establish a procedural due process claim, a plaintiff must show that (1) [s]he had a life, liberty, or property interest protected by the Due Process Clause; (2) [s]he was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving him of the property interest." *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013). "Procedural due process claims do not implicate the egregiousness of the action itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. And although the existence of a 'protected' right must be the threshold determination, the focus of the inquiry centers on the *process* provided, rather than on the nature of the *right*. *Howard v. Grinage*, 82 F.3d 1343, 1349–50 (6th Cir. 1996) (emphasis in original).

Clark contends that Erlanger did not consider her case individually but does not suggest why she was entitled to individual consideration, nor does she explain why she did not seek an individual exemption for religious or medical reasons. Nor does she state what protected interest is at play here and what procedural right Erlanger violated by implementing the mandate. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Clark has not established an interest in life, liberty, or property that has allegedly been violated by the Erlanger mandate, nor does she allege a constitutionally deficient procedure. Instead, she merely opposes the mandate generally and notes that she "has refused and continues to refuse to be vaccinated." [Doc. 15, ¶

9

IX]. Accordingly, Clark has failed to state a claim that her procedural due process rights have been violated by Erlanger following the CMS vaccine mandate.

**D.      Whether Clark has plausibly alleged Jackson violated her right to equal protection.**

Clark alleges she contracted the COVID-19 virus, and claims "it violates the 5th and 14th Amendments to the United States Constitution to treat [her] in the same manner as someone who has not had Covid-19." [Doc. 15, pg. 5, § XIII]. Jackson interprets this as an equal protection claim [Doc. 17, pg. 26-27]. The "threshold inquiry" of an equal protection claim is disparate treatment, or whether there are comparators who are similarly situated to a plaintiff who are treated more favorably than she is. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Clark has not alleged she was treated differently from those similarly situated to her (i.e. those who have contracted COVID-19), but rather alleges she was treated similarly to people different from her (i.e. those who have not contracted COVID-19). This does not constitute a cognizable equal protection claim.

Even supposing Clark had properly alleged disparate treatment, her equal protection claim would not be subject to strict scrutiny. If a plaintiff can show disparate treatment between discrete groups, courts must then determine whether that disparate treatment (1) implicates a fundamental right or (2) involves a suspect class, in which case they apply strict scrutiny. *See id.* By contrast, "[e]qual-protection claims that neither implicate a fundamental right nor involve a suspect . . . class require only rational-basis review." *Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015) (citations omitted). The right to remain unvaccinated and employed in a CMS covered facility that is subject to a vaccine mandate is not a fundamental right, and Clark's alleged class—individuals who have recovered from COVID-19 but are subject to the Erlanger vaccine mandate—is not a

suspect class. Therefore, Clark's supposed equal protection claim only subjects the Erlanger vaccine mandate to rational basis review.

Jackson stated that Erlanger would comply with the CMS mandate to maintain its federal funding for Medicare and Medicaid programs, a reason which is rationally related to Erlanger continuing to function as a hospital serving the public in Hamilton County, Tennessee. Moreover, Erlanger's mandate made no distinction between people who had contracted COVID-19 and those who had not, and Clark's alleged membership in the class of people with natural immunity had no bearing on Erlanger's decision to require vaccination of everyone regardless of prior immunity. *See Troogstad v. City of Chicago*, No. 21 C 5600, 2021 WL 5505542, at *4 (N.D. Ill. Nov. 24, 2021) (" . . . the questions Plaintiffs raise about the efficacy of vaccines as compared to natural immunity do not persuade the Court that Defendants' [vaccine mandate policies] lack a rational basis."). Clark has failed to plausibly allege any violation of her right to equal protection under the law.

E. **Whether Clark has plausibly alleged misrepresentation.**

Clark claims Jackson "misrepresented to her and all other employees at [Erlanger] that he [was] under a legal compulsion to fire them if they did not get vaccinated by December 5, 2021." [Doc. 15, ¶ XIII]. Clark alleges Jackson had "highly competent legal counsel" that would have advised him the government vaccine mandate was "unconstitutional on its face," but instead of listening to this advice, Jackson "chose to keep peace with CMS to protect [Erlanger's] solvency, and unconstitutionally crammed down" the vaccine mandate on Erlanger employees [*Id.*].

In Tennessee, "[a] claim for intentional misrepresentation has the following six elements: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was

made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation. *Stanfill v. Mountain,* 301 S.W.3d 179, 188 (Tenn. 2009) (internal citation omitted).

Clark alleges Jackson knew the vaccine mandate was unconstitutional, and therefore not lawful, but still misrepresented to employees that he was under a "legal compulsion" to fire them if they did not get vaccinated by December 5, 2021. The Supreme Court's decision in *Missouri* upholding the CMS mandate as constitutional destroys this argument and any claim for misrepresentation. Moreover, Jackson never stated that he was "legally" required to issue a vaccine mandate, but instead explained that complying with the mandate was necessary for Erlanger to remain financially viable [*See* Doc. 17-3]. Clark has failed to plausibly allege that Jackson misrepresented any legal obligation to require Erlanger employees to be vaccinated.

### IV. CONCLUSION

For the reasons stated above, Clark has failed to plausibly allege any claims against Jackson. Accordingly, Jackson's motion to dismiss [Doc. 16] is **GRANTED** and Clark's amended complaint [Doc. 15] is **DISMISSED WITH PREJUDICE.** Jackson's Second Motion to Strike Class Allegations [Doc. 18] is **DENIED as MOOT.** A separate judgment will enter.

SO ORDERED:

s/Clifton L. Corker
United States District Judge